Kathryn L. MAGILL

v.

**APPALACHIA
INTERMEDIATE UNIT 08.**

Civ. A. No. 84–669.

United States District Court,
W.D. Pennsylvania.

Sept. 24, 1986.

Jeffrey K. Sprecher, Reading, Pa., for plaintiff.

Vasil Fisanick, Barnesboro, Pa., and Nora Barry Fischer, Pittsburgh, Pa., for defendant.

## OPINION

GERALD J. WEBER, District Judge.

Plaintiff has brought this civil rights action under 42 U.S.C. § 1983 alleging defendants violated her rights under the 1st and 14th Amendments, and seeking declaratory, injunctive and monetary damages. Various motions to dismiss and to strike portions of plaintiff's complaint are pending, along with a motion to seal the record in this case. Following the filing of these motions, one defendant, James J. Hogan, Bishop of the Altoona-Johnstown Diocese, was dismissed from the case by stipulation. Motions filed by the other defendants are still pending and will be decided herein.

### The Parties

Plaintiff is a guidance counselor employed by the Appalachia Intermediate Unit 08 ("IU") who was at all times relevant to this action assigned to the IU's non-public school program. The defendants remaining in this action include the Intermediate Unit itself, as well as the elected members of the IU's Board of Directors and the Executive Director of the Intermediate Unit. The Intermediate Unit is part of the public school system established by the Commonwealth to provide on a regional basis certain auxiliary educational services to both public and nonprofit, nonpublic school districts assigned to it. *See* Public School Code of 1949, P.L. 30 § 901–A, 24 P.S. § 9–951 *et seq.*, as amended (1983–84); *Commonwealth ex rel. Waychoff v. Tekavec*, 456 Pa. 521, 523, 391 A.2d 1 (1974). The Intermediate Units are regulated by the Pennsylvania State Board of Education which agency has promulgated regulations at 22 Pa. Code § 112.1, *et seq.* Each Intermediate Unit is also governed by its board of directors.

### Eleventh Amendment Issues

The Intermediate Unit argues that all claims against it and its officers and board members are barred by the Eleventh Amendment, and cannot be brought in federal court since the Intermediate Unit is a state agency, or as plaintiff indicates, "an extension of the Commonwealth of Pennsylvania." Complaint, Paragraph 4.

States and state agencies may not be sued in federal court without their consent unless Congress, pursuant to a valid exercise of power, unequivocally abrogates this immunity. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98–99, 104 S.Ct. 900, 906–07, 79 L.Ed.2d 67 (1984). *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), created a narrow exception to this general rule by finding that a suit may be brought against state officials challenging the federal constitutionality of their official actions. The *Young* exception has been limited to suits for prospective injunctive relief, *see Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974); *Green v. Mansour*, — U.S. —, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), which seek vindication of federal rights rather than rights grounded in state law. *Pennhurst II, supra.*

We believe that the Intermediate Unit is neither a political subdivision, nor a

local governmental unit. It is financed by the Commonwealth, 24 P.S. §§ 9–957, 9–967.1, 9–972.1, and is also empowered to accept funds from federal, local and other sources. The IU has no independent ability to levy taxes. Thus we find it distinguishable from the local independent school boards and school districts which may be sued under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Intermediate Unit here is part of a state agency and is not subject to suit in federal court under the Eleventh Amendment. *See Mount Healthy Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). No exception or waiver exists under the facts of this case for this defendant and it will be dismissed.

■■■ Whether claims against the individual defendants in their official capacity are barred by the Eleventh Amendment depends on the nature of the suit, the relief demanded and the way in which that relief would affect the state. *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). Plaintiff may not obtain monetary damages since there is no doubt that the state is the real party in interest and any such award would necessarily be paid with state funds. If appropriate, however, the court could issue prospective injunctive relief since plaintiff alleges that the adoption of an official policy by defendants has violated her federally established rights. *Pennhurst State School & Hospital, supra.* Since some scenario exists in which this plaintiff's claims would not be barred, the motion to dismiss of the individual defendants sued in their official capacity will not be granted on Eleventh Amendment grounds, but will be considered in connection with the discussion on the merits hereinafter.

### The Claims

Plaintiff states that she brings a civil rights action pursuant to 42 U.S.C. § 1983 "for the purpose of enjoining the combined action of Appalachia Intermediate Unit 08 and the Altoona-Johnstown Roman Catholic Diocese, for the purpose of having declared and adjudged unconstitutional certain regulations" [1] of the Intermediate Unit which were promulgated by the Board. *See* Complaint, p. 1. Plaintiff states that the provisions of the Intermediate Unit's Handbook and certain actions of the IU and the Diocese are in violation of the constitution because they impose the will of the Diocese on plaintiff through the Intermediate Unit violating the First Amendment principle of separation of Church and State and violating Fourteenth Amendment due process and equal protection.[2]

Defendants claim that plaintiff has not stated a claim on which relief may be granted and state that the complaint lacks necessary specificity. *See Hall v. Pennsylvania State Police*, 570 F.2d 86 (3d Cir. 1978). (Plaintiffs in civil rights cases are

---

1. The regulation in question reads as follows:
   L. Teacher Responsibilities:
   1. Responsibilities with the Intermediate Unit:
   a. All Special Education teachers are directly responsible to the supervisor of Special Classes for program operation and supervision.
   2. Responsibilities with the District:
   a. The building Principal or head teacher is *your* Principal, too. Though your class is Intermediate Unit operated, it also functions under the management of your local school district in most matters of general school rules and regulations. The pupils in your particular group still are citizens of the whole school, and should so behave and respond with your help and instruction. The teacher should do all that is possible to achieve this goal.
   Exhibit A Complaint—Appalachia Intermediate Unit 08 Educational Services Teacher Handbook 1983–84.

2. Plaintiff uses some language suggesting that a § 1985 conspiracy action is also intended, *see* Complaint at 17 a. and d., but plaintiff denies bringing a § 1985 action in her brief. *See* Memorandum Contra to Motions of Defendant Hogan, p. 4, para. II. Language in the complaint also indicates "a chilling effect may derive upon other people so situated as plaintiff in the event they should speak out as plaintiff has done." Complaint, p. 9, para 9. However, the complaint as a whole does not state a violation of 1st Amendment freedom of speech and we do not believe one has been pled.

required to plead specific facts including alleged conduct, improper motive, times and places of activity complained of, and persons responsible.)

### Fourteenth Amendment Claims

■ We find plaintiff's complaint entirely devoid of any allegations which would state a due process claim against these defendants. Plaintiff has not alleged any conduct by the individual defendants remaining in this action which deprived her of any federal right. Plaintiff alleges conduct by Sister Paula DelGrosso, assistant superintendant of education for the Roman Catholic Diocese of Altoona-Johnstown, by Sister George Ann Biscan, principal of West End Catholic School, and by the "Diocese." This conduct is alleged to have occurred in 1982. None of these individuals are named in the complaint. Moreover, we have no doubt that their alleged conduct does not represent state action.

■ Plaintiff does allege that she notified her immediate supervisor, A.J. Pelliccioni, of her difficulties with the above-named private individuals and that these difficulties were interfering with her job performance. Plaintiff states "Pelliccioni advised Plaintiff to conform to the wishes of Sister Paula DelGrosso since the said Sister Paula DelGrosso would make the final decision regarding Plaintiff's teaching assignment and, if, in fact, Plaintiff would have a job." Complaint, para. 11, p. 5. However, A.J. Peliccioni is not a defendant in this action, and a § 1983 action cannot be based on a theory of vicarious liability or respondeat superior. *See Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

Plaintiff's complaints against the named defendants indicate that when she made complaints to unspecified Intermediate Unit Officials about the conduct of the private persons with whom she had to associate to perform her job, these officials told her to conform to the wishes of the Diocese because that is the way the program is operated. Furthermore, she was required to submit a weekly schedule to Intermediate Unit which no other counselor was required to do. The only specific factual allegation is that on February 16, 1984, defendant Joseph Tarris, the non-public coordinator of the Intermediate Unit at that time, informed plaintiff that if she continued to question the actions of the Intermediate Unit she would be discharged. Joseph Tarris further presented plaintiff with a copy of the Teacher Handbook for 1983–84, pointing out Paragraph L.2.a. and informing plaintiff that she must conform with the wishes of principals of the Catholic Schools in which she teaches.

■ Taking the allegations against the named defendants as true for purposes of this action, we fail to see where plaintiff was deprived of any identifiable federally protected property or liberty. *See Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Plaintiff further fails to demonstrate or allege that she is a member of a protected class and that she was subjected to unjust and illegal discrimination between persons in similar circumstances. *United States v. Torquato,* 602 F.2d 564, 568 (3d Cir.1979); *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

For these reasons, we find that plaintiff has failed to establish any due process or equal protection claim under the Fourteenth Amendment.

### First Amendment Claim

It appears to us that plaintiff's complaint taken as a whole alleges that the defendants, through their conduct and enforcement of the Teachers Handbook provision paragraph L.2.a., have established a policy of the Intermediate Unit, which as applied to plaintiff and her particular situation, constitutes an improper delegation of supervisory authority to parochial school per-

sonnel.[3] When parochial school personnel are given supervisory authority over Intermediate Unit employees who provide auxiliary services to parochial school children, plaintiff complains that this constitutes a violation of the First Amendment prohibition against establishment of religion.

 We believe that this is a case where an alternate construction of what is essentially a local administrative provision would make it unnecessary for us to address the constitutional issue raised. The Commonwealth of Pennsylvania has adopted the policy that it is important that "auxiliary services" be provided to all students in the Commonwealth regardless of whether they attend public or non-public schools. See 24 P.S. § 9–972.1. We believe that a decision on the constitutional issue raised would entail an unwarranted intrusion into this very sensitive area of state policy and local concern. The Commonwealth has charged the State Board of Education with adopting such regulations as are necessary to guide the organization and operation of the Intermediate Unit. *See* 24 P.S. § 9–955. The issues raised here can more efficiently and appropriately be addressed via an administrative proceeding before the Pennsylvania Department of Education or in State Court. For all of these reasons, we believe that this is a case in which we should abstain from exercising jurisdiction under the *Pullman* abstention doctrine, and issues of comity. *See Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *D'Iorio v. County of Delaware,* 592 F.2d 681 (3d Cir.1981); and *Burford v. Sun Oil Company,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Fair Assessment in Real Estate Asso. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). Plaintiff may proceed with her First Amendment claim in state administrative and judicial proceedings and may ultimately seek review of the state decision before the Supreme

Court. *Fair Assessment, supra,* at 116, 102 S.Ct. at 186.

### Motion to Strike & Seal Record

 Defendants have moved to strike paragraph 10 of the complaint as scandalous and impertinent matter. The allegations contained in this paragraph reflect adversely on the moral character of an individual who is not a party to this suit. We view these allegations as unnecessary to a decision on the matters in question, and believe that they were improperly pled. For these reasons, we will grant defendants' motion to strike and seal the record.

An appropriate order will issue.

---

**3.** Plaintiff does not contend that the entire system of providing auxiliary services to non-public schools in the Commonwealth of Pennsylvania through the Intermediate Unit is an unconstitutional establishment of religion. Moreover, on its face the provision in question is neutral stating that employees must cooperate with and answer to the principal in the school in which the employee works. This appears generally to be a common sense administrative decision.